UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALISSAN L. HATLESTAD,

     Plaintiff,

v.                                                                    Case No. 8:21-cv-2791-CPT

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

     Defendant.
_____/

**O R D E R**

The Plaintiff seeks judicial review of the Commissioner's denial of her claims for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). For the reasons discussed below, the Commissioner's decision is reversed, and the case is remanded.

I.

The Plaintiff was born in 1980, completed two years of college, and has past relevant work experience as a deli clerk. (R. 37, 130, 356). In April 2019, the Plaintiff applied for DIB and SSI, alleging disability as of December 2018 due to mental and physical injuries she suffered as a result of a violent attack. (R. 130–59). Those injuries included a crushed airway; a head injury and concussion; broken bones in her jaw,

cheek, right hand, and both eyes; the loss of thirteen top teeth and five bottom teeth; screws inserted into her mouth and hardware holding her jaw together; and post-traumatic stress disorder (PTSD).  (R. 130–31, 145–46).   The Social Security Administration (SSA) denied the Plaintiff's applications both initially and on reconsideration.  (R. 160–67, 196–203).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter in April 2021.  (R. 45–89, 250–51).  The Plaintiff was represented by counsel at that proceeding and testified on her own behalf.  (R. 47, 57–89).

In a decision issued in August 2021, the ALJ determined that the Plaintiff (1) had not engaged in any substantial gainful activity since her alleged onset date in December 2018; (2) had the severe impairments of multiple facial fractures stemming from a blunt head trauma, including bilateral mandible/orbital/max sinus/pterygoid/left zygoma/nasal bone fractures, status-post open reduction internal fixation; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listings;[1] (4) had the residual functional capacity (RFC) to perform light work, subject to certain nonexertional limitations; and (5) could not engage in her past relevant work but was capable of making a successful adjustment to other jobs that exist in significant numbers in the

---

[1] The listings are found at 20 C.F.R. Pt. 404, Subpt. P, App'x 1, and catalog those impairments that the SSA considers significant enough to prevent a person from performing any gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  When a claimant's affliction matches an impairment on the list, the claimant is automatically entitled to disability benefits.  *Id.*; *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

national economy.  (R. 27–44).  In light of these findings, the ALJ concluded that the Plaintiff was not disabled.  (R. 39).

The Appeals Council denied the Plaintiff's request for review.  (R. 1–7). Accordingly, the ALJ's decision became the final decision of the Commissioner. *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1313 (11th Cir. 2021) (citation omitted).

## II.

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than [twelve] months."  42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).[2]  A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To determine whether a claimant is disabled, the Social Security Regulations prescribe "a five-step, sequential evaluation process."  *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)).[3] Under this process, an ALJ must assess whether the claimant: (1) is performing

---

[2] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

[3] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

3

substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals one of the listings; (4) has the RFC to engage in her past relevant work; and (5) can perform other jobs in the national economy given her RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). Although the claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278–79 (11th Cir. 2020) (citation omitted); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove she cannot engage in the work identified by the Commissioner. *Goode*, 966 F.3d at 1279. In the end, "'the overall burden of demonstrating the existence of a disability . . . rests with the claimant.'" *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the claimant's disability application after a hearing. 42 U.S.C. § 405(g). Judicial review is confined to determining whether the Commissioner applied the correct legal standards and whether the decision is buttressed by substantial evidence. *Id.*; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable person would accept as adequate to support a

conclusion." *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks and citations omitted).   In evaluating whether substantial evidence bolsters the Commissioner's decision, a court may not decide the facts anew, reweigh the evidence, or make credibility determinations.   *Viverette*, 13 F.4th at 1314 (citation omitted); *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam)).   While a court will defer to the Commissioner's factual findings, it will not defer to her legal conclusions.   *Viverette*, 13 F.4th at 1313–14; *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

III.

The Plaintiff raises two challenges on appeal: (1) the ALJ erred at step five of the sequential evaluation process in relying exclusively on the Medical-Vocational Guidelines (known as the grids) to find that the Plaintiff was not disabled; and (2) the Appeals Council erred by not remanding the matter given the supplemental evidence tendered by the Plaintiff following the ALJ hearing.[4]   (Docs. 22, 28).   After careful review of the parties' submissions and the record, the Court finds that both the Plaintiff's claims have merit.

A.

As noted above, where, as here, it is determined that a claimant cannot return to her prior work, the burden of proof temporarily shifts to the Commissioner at step five to show that "'there is other work available in significant numbers in the national

---

[4] The Court has re-ordered the Plaintiff's arguments for purposes of its analysis.

economy that the claimant is able to perform'" notwithstanding her impairments. *Sampson*, 694 F. App'x at 734 (quoting *Jones*, 190 F.3d at 1228); *see also* 20 C.F.R. §§ 404.1560(c), 416.960(c).   There are "two avenues" through which an ALJ may assess whether the claimant has the ability to adjust to such alternative work—the grids and VE testimony.   *Phillips*, 357 F.3d at 1239–40.

Promulgated by the Commissioner, the grids establish the types and numbers of occupations that are present in the United States.   *Heckler v. Campbell,* 461 U.S. 458, 461 (1983).   The grids "consist of a matrix of the four factors" that Congress has found are relevant to the disability determination—namely, "physical ability, age, education, and work experience—and [they] set forth rules that identify whether jobs requiring specific combinations of these factors" are sufficiently prevalent in the United States. *Id.* at 461–62 (footnotes omitted).   If a claimant's qualifications coincide with the criteria listed in a rule, the grids will provide a determination as to whether the claimant is disabled.   *Id.* at 462; 20 C.F.R. §§ 404.1569, 416.969.

There are two situations in which an ALJ may not rely exclusively on the grids. The first scenario is when the claimant's *exertional* limitations (i.e., those restrictions related to strength) "prevent the claimant from performing a full range of employment."[5]   *Phillips*, 357 F.3d at 1242.   The second scenario is when the claimant has *nonexertional* limitations (i.e., those restrictions not related to strength) that

---

[5] "Exertional limitations affect an individual's ability to meet the seven strength demands of the job: sitting, standing, walking, lifting, carrying, pushing, and pulling."   *Phillips*, 357 F.3d at 1242 n.11 (citing Social Security Ruling (SSR) 96-4, 1996 WL 362210 (July 2, 1996)).

"significantly limit[ ] the claimant's basic work activities."[6]   *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (per curiam); *Phillips*, 357 F.3d at 1243; *Watson*, 376 F. App'x at 956.  A restriction that "significantly limit[s] basic work skills" is one that precludes a claimant from engaging in "'a *wide* range' of work at a given work level." *Phillips*, 357 F.3d at 1243 (quoting *Foote*, 67 F.3d at 1559).

Where nonexertional restrictions are present, an "ALJ may use the [g]rids as a framework to evaluate vocational factors, but must also introduce independent evidence, preferably through VE testimony, of the existence of jobs in the national economy that the claimant can perform." *Owens v. Comm'r of Soc. Sec.*, 508 F. App'x 881, 883 (11th Cir. 2013) (per curiam).  A VE is unnecessary "only when the claimant can clearly do *unlimited* types" of work at a particular level.  *Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989) (per curiam) (quoting *Ferguson v. Schweiker*, 641 F.2d 243, 248 (5th Cir. Unit A, March 1981)).  To satisfy this standard, the ALJ must "make a specific finding as to whether the nonexertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations."  *Foote*, 67 F.3d at 1559 (internal quotation marks omitted). Nevertheless, the favored approach for demonstrating that the claimant can engage in a designated occupation is through VE testimony.  *Id.* (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986)).

---

[6] Nonexertional limitations include those related to "maintaining body equilibrium, crouching, bending, stooping, using fingers, seeing, hearing or speaking, mental functions[,] and tolerating environmental working conditions." *Watson v. Astrue*, 376 F. App'x 953, 956 n.7 (11th Cir. 2010) (per curiam) (citing SSR 83-14, 1983 WL 31254 (Jan. 1, 1983)).

The Eleventh Circuit's decision in *Marbury v. Sullivan*, 957 F.2d 837 (11th Cir. 1992) (per curiam) is instructive in this regard.  In that case, the ALJ predicated his disability determination solely on the grids despite finding that the claimant could perform light work, provided it did not involve unprotected heights or dangerous moving machinery.  *Id.* at 839.  Although the ALJ concluded that the claimant's restrictions did not reduce the range of light work available to the claimant, the Eleventh Circuit disagreed, stating that it was evident from the ALJ's findings "that [the] claimant was not able to do *unlimited* types of light work" due to the environmental restrictions.  *Id.*  As a result, the Eleventh Circuit held that VE testimony was needed to decide whether the claimant's limitations were severe enough to foreclose him "from performing a wide range of light work."  *Id.*

In this case, the ALJ found that the Plaintiff had no exertional restrictions but could only perform light work subject to the following *nonexertional* limitations—she could not climb ladders, ropes, or scaffolds; she could occasionally balance; she could frequently climb ramps and stairs; she could frequently stoop, kneel, crouch, and crawl; and she had to avoid concentrated exposure to unprotected heights and moving machinery.  (R. 32).  The ALJ then determined that the Plaintiff's nonexertional restrictions had "little or no effect on the occupational base of unskilled light work"[7]

---

[7] The occupational base is defined as "[t]he number of occupations as represented by RFC that an individual is capable of performing."  SSR 83-10, 1983 WL 31251, at *7 (Jan. 1, 1983).

8

and referenced SSRs 83-14 and 83-15[8] to buttress this assessment.  (R. 38).  In particular, the ALJ reasoned:

> If the [Plaintiff] had the [RFC] to perform the full range of light work, considering the [Plaintiff's] age, education, and work experience, a finding of "not disabled" would be directed by [the grids].  In this case, *the [RFC] contains some additional nonexertional limitations.  However, the additional limitations in the [RFC] have little or no effect on the occupational base of unskilled light work.*
>
> Specifically, the [RFC] precludes climbing of ladders, ropes, and scaffolds, but SSR 83-14 states that the inability to ascend or descend ladders or scaffolding is not significant at any exertional level.  The [RFC] limits the [Plaintiff] to frequent stooping, but SSRs 83-14 and 85-15 state that stooping is required only occasionally at the light exertional level.  The [RFC] limits the [Plaintiff] to frequent climbing of ramps and stairs, and occasional balancing.  But SSR 85-15 states that some limitations in balancing and climbing are not significant at any exertional level.  The [RFC] limits the [Plaintiff] to frequent kneeling, crouching, and crawling.  But SSR 85-15 states that kneeling and crawling limitations do not have a significant impact on the broad world of work at any exertional level.  And, SSR 83-14 states that crouching is not required at the light exertional level.  The [RFC] limits the claimant to avoiding concentrated exposure to unprotected heights and moving machinery.  But SSR 85-15 states that restrictions against working at unprotected heights or in proximity to dangerous, moving machinery are not significant at any exertional level.
>
> *In sum, the nonexertional limitations have little to no effect on the remaining job base at the light exertional level.  Therefore, using the [grids] as a framework for decisionmaking, a finding of "not disabled" is appropriate.*

---

[8] SSRs 83-14 and 83-15 are policy statements that address using the grids as a framework for evaluating exertional and/or nonexertional impairments.  *See* SSR 83-14, 1983 WL 31254, at *1 (Jan. 1, 1983); SSR 83-15, 1985 WL 56857, at *7 (Jan. 1, 1985).

(R. 38–39) (emphasis added).  Based upon the foregoing, and without taking any VE testimony on the matter, the ALJ concluded that the Plaintiff could not perform her past relevant work but could engage in other occupations that exist in significant numbers in the national economy.  (R. 37–39).

Against this backdrop, the Plaintiff now argues the ALJ erred in relying exclusively on the grids because he did not deem the Plaintiff to be capable of performing unlimited types of light work, finding instead "that there was 'little or no effect on the occupational base of light work.'"  (Doc. 22 at 13–14) (citing R. 38).  The Commissioner counters that, as supported by SSRs 83-14 and 83-15, the ALJ properly determined that the Plaintiff's nonexertional limitations "would not significantly erode the occupational base."  (Doc. 23 at 14–15).

The problem with the Commissioner's position is two-fold.  First, binding Eleventh Circuit case law indicates that where the ALJ imposes nonexertional restrictions, VE testimony is required.  *See Marbury*, 957 F.2d at 839 ("An ALJ's conclusion that a claimant's limitations do not significantly compromise his basic work skills or are not severe enough to preclude him from performing a wide range of light work is not supported by substantial evidence unless there is testimony from a [VE]."); *Allen*, 880 F.2d at 1202 ("Absent testimony from a [VE], the ALJ's conclusion that [the claimant's] mental limitations d[id] not significantly compromise her basic work skills or [were] not severe enough to preclude her from performing a wide range of light work [was] not supported by substantial evidence."); *see also Owens*, 508 F. App'x at 884 ("The ALJ concluded that, based on his exertional limitations, [the

10

claimant] retained the [RFC] to perform unskilled medium work and that his nonexertional limitations did not significantly limit his basic work skills at this level. However, despite the existence of nonexertional impairments, the ALJ did not introduce independent evidence to support this conclusion—whether by way of VE testimony or otherwise—articulating specific jobs in the national economy that [the claimant could] perform, and therefore failed to develop a full and fair record with substantial evidence on this issue.") (citations omitted); *Johnson v. Colvin*, 2015 WL 1418741, at *9 (M.D. Fla. Feb. 20, 2015) ("The Eleventh Circuit has routinely held that reliance on the grids . . . was improper where a claimant has certain nonexertional limitations.") (collecting cases), *adopting report and recommendation as modified*, 2015 WL 1423127 (M.D. Fla. Mar. 27, 2015).   And in light of this authority, especially *Marbury* and *Allen*, courts in this District have determined that VE testimony is necessary even where an ALJ relies on SSRs 83-14 and 85-15 in finding that the occupational base is not eroded.   *See, e.g.*, *Hines v. Comm'r of Soc. Sec.*, 2018 WL 4361022, at *3 (M.D. Fla. Sept. 13, 2018) ("[T]he ALJ found that the additional limitations have little or no effect on the occupational base of unskilled medium work. Then, relying upon [SSRs] 83-14 and 85-15, the ALJ found that the limitations in the RFC did not significantly erode [claimant's] occupational base.   Courts within this District have found a determination made in that manner to be both an error of law and to be a decision unsupported by substantial evidence . . . .") (internal quotation marks and citations omitted); *Blake v. Colvin*, 2014 WL 109113, at *3 (M.D. Fla. Jan. 10, 2014) ("The Commissioner contends that [SSRs] 83–14 and 85–15 indicate that

the [claimant's] particular limitations d[id] not erode significantly the grid's occupational base and therefore d[id] not preclude the [ALJ] from concluding that the [claimant could] perform the full range of light work.  This contention is unavailing because the Eleventh Circuit decisions of *Marbury . . .* and *Allen . . .* are binding on this court.  In contrast, [SSRs] do not have the force of law and are not binding on the courts.") (internal quotation marks and citations omitted); *see also Thompson v. Saul*, 2021 WL 62484, at *6 (M.D. Fla. Jan. 7, 2021) ("[The ALJ], relying upon SSR 83-10, found that a limitation to simple work had little or no effect on the occupational base of light work represented by the grids and, therefore, a significant number of jobs existed in the national economy that the plaintiff could perform.  However, [SSRs] do not have the force of law.  In all events, SSR 83-10 does not overcome contrary Eleventh Circuit precedent that was rendered after the promulgation of that Social Security Ruling.") (internal citations omitted).  Notably, the Commissioner does not address, much less distinguish, this case law.

Of further concern to the Court is the fact that the ALJ seemingly failed to find the nonexertional limitations to be "severe enough to preclude a wide range of employment at the given work capacity level."  *Foote*, 67 F.3d at 1559.  Instead, as noted, the ALJ simply concluded that these restrictions had "little or no effect on the occupational base" of work.  (R. 38).  This conclusion has likewise been deemed insufficient by other courts in this District.  *See, e.g., Hines*, 2018 WL 4361022, at *4 ("[T]he ALJ applied the incorrect legal standard by making findings related to [the c]laimant's 'occupational base,' but not addressing whether the non-exertional

limitations significantly limit[ed the claimant's] basic work skills."); *Freeman v. Comm'r of Soc. Sec.*, 2015 WL 6438750, at *6 (M.D. Fla. Oct. 22, 2015) ("[A] finding that [the claimant's] 'additional limitations' do not significantly erode the occupational base does not equate to a finding that [the claimant] is able to perform unlimited unskilled light work, nor are those findings interchangeable or synonymous with one another.") (citations omitted); *Johnson v. Colvin*, 2015 WL 1423127, at *3 (M.D. Fla. Mar. 27, 2015) ("Without expressly addressing whether those non-exertional limitations significantly limited [the claimant's] basic work skills, the ALJ concluded that [the claimant's] occasional postural limitations would not significantly erode the occupational base.  That finding, however, does not equate to a finding that [the claimant] could perform a full range of light work, that is, unlimited types of light work.") (internal quotations and citations omitted).[9]

In light of the above, the Court need not address the Plaintiff's additional argument in support of her first challenge that the ALJ erred in relying on SSR 85-15 for the proposition that "some limitations in balancing and climbing are not significant at any exertional level."  (Doc. 22 at 15) (quoting R. 38).  It bears noting, however, that the ALJ did not appear to accurately characterize the applicable SSR.  *See* SSR 85-15, 1985 WL 56857, at *7 (providing that "[l]imitations in *climbing* and *balancing* can have varying effects on the occupational base, depending on the degree of limitation and the type of job. . . .  Where the effects of a person's actual limitation of

---

[9] The Court recognizes that some courts in this District have reached the opposite conclusion.  *See, e.g.*, *Sherman v. Astrue*, 2009 WL 1841604, at *9 (M.D. Fla. June 26, 2009).

climbing and balancing on the occupational base are difficult to determine, the services of a [VE] may be necessary.").

B.

The Plaintiff's second challenge—as noted above—is that the Appeals Council erred by not remanding the case back to the ALJ based on the records the Plaintiff sought to have considered after the ALJ's decision. These records are from a facility named Centerstone where the Plaintiff received mental health and other forms of treatment between March 2020 and August 2020. (R. 91–129).

A claimant may generally offer additional evidence at each stage of the SSA's administrative process, including when the claimant's disability application is before the Appeals Council. *Norton v. Comm'r of Soc. Sec.*, 853 F. App'x 519, 520 (11th Cir. 2021) (per curiam) (citing *Hargress*, 883 F.3d at 1308). The Appeals Council will review a case if the evidence submitted is new, material, chronologically relevant, and "there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5).

When a claimant presents supplemental evidence to the Appeals Council, a reviewing court must decide whether such evidence renders the denial of benefits improper. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007). In addressing this issue, a reviewing court may examine factors that the Appeals Council did not take into account in arriving at its decision. *Pruitt v. Soc. Sec. Admin., Comm'r*, 2023 WL 196015, at *5 (11th Cir. 2023) (per curiam). If the Appeals Council improperly refuses to consider newly tendered evidence, "it commits legal

14

error and remand is appropriate." *Washington v. Soc. Sec. Admin, Comm'r*, 806 F.3d 1317, 1321 (11th Cir. 2015).

Because the Centerstone materials relate to the Plaintiff's psychological problems, the Court begins with a review of the ALJ's analysis of that issue. At step two of the sequential evaluation process, the ALJ determined that the Plaintiff's medically determinable mental impairments—consisting of PTSD, major depressive disorder, and unspecified anxiety disorder—were non-severe. (R. 30). The ALJ also considered the four broad areas of mental functioning—understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself—and found that the Plaintiff had a mild limitation in each. (R. 31).

At step four, the ALJ reviewed the mental health evidence of record, which included documentation from the Plaintiff's hospitalization in December 2018 following the aforementioned physical assault. (R. 33). According to one physician, the Plaintiff's stay at the hospital "became complicated because of [her] behavioral issues and [her] history of drug and alcohol abuse," and resulted in the Plaintiff "requir[ing] a bed sitter to help with her impulsive behavior." *Id.*

The ALJ also considered a July 2019 consultative psychological examination of the Plaintiff performed by Dr. Martha Dedricks. (R. 36, 1980–83). After interviewing the Plaintiff, Dr. Dedricks found the Plaintiff had no limitations in her ability to understand and remember simple and detailed instructions; no limitations in her ability to sustain concentration, persistence and pace for simple and detailed tasks;

and only mild limitations in her ability to interact socially and to adapt to routine stressors and changes of a general work environment. *Id.*

In his decision, the ALJ noted that Dr. Dedricks's assessments comported with the determinations from another psychological evaluation of the Plaintiff conducted in December 2019, in which a mental health provider—Dr. Karim Yamout—concluded that the Plaintiff was competent to stand trial for charges related to a DUI. (R. 36, 2077–80). The ALJ also found Dr. Dedricks's opinion persuasive because "the treatment record [did] not contain any significantly abnormal mental status findings." (R. 36).

And finally, the ALJ discussed the opinions of record from various state agency psychological experts, who offered that the Plaintiff's mental impairments were nonsevere and caused no more than mild limitations. (R. 31, 35, 136–38, 151–53, 173–76, 187–90).

Based upon these evaluations and the record, the ALJ determined at step four:

[T]he [Plaintiff's] mental status examinations have failed to reveal any significant mood or formal thought or psychotic disorder. Moreover, the [Plaintiff] has not sought regular outpatient mental health counseling, nor has she required hospitalization due to psychiatric-based symptoms. Having considered all of the above, I find that the [Plaintiff's] allegations of a total inability to work are unsupported by the medical evidence of record.

(R. 34). The ALJ then formulated an RFC that did not include any mental limitations. (R. 32).

16

Subsequent to the ALJ's decision, the Plaintiff requested that the materials from Centerstone be considered.   These materials are comprised of records from two psychiatric providers, Drs. Janet Taylor and Chen Li, as well as two counselors.  (R. 91–129).  Although somewhat unclear, the Centerstone documents appear to show that the Plaintiff was voluntarily admitted to the facility for both inpatient and outpatient treatment. (R. 104–05, 113, 2076).  According to a letter from Centerstone, the Plaintiff was participating in a court diversionary program which was designed "to assist those [who] have chronic mental illness that [has] caused homelessness."[10]  (R. 2076).

The Centerstone records reveal that the Plaintiff commenced her treatment at the facility in early March 2020, and that she was soon thereafter diagnosed by Dr. Taylor with PTSD, unspecified, along with major depressive disorder, single episode, unspecified.  (R. 125–28).  Dr. Taylor described the Plaintiff as exhibiting signs of depression and anxiety, with an anxious and depressed mood, appropriate and sad affect, normal speech, appropriate thought content, and fair insight and judgment.  (R. 128).  Dr. Taylor prescribed Lexapro for the Plaintiff's depression and Seroquel to stabilize her mood and noted approximately two weeks later that these medications were working.  (R. 92, 125, 128).

The Centerstone records further evidence that, at the beginning of April 2020, the Plaintiff reported to Dr. Taylor that she was "recently Baker-acted after making a

---

[10] This correspondence was part of the record reviewed by the ALJ.

veiled threat to throw herself in front of a car" following an altercation with a "psychotic resident." (R. 123). According to Dr. Taylor, "[i]t was also revealed that [the Plaintiff] had been drinking more" and that her medications had been increased during her stay at the hospital. *Id.*

The Centerstone records also indicate that, in a mental status examination conducted at the end of April 2020, Dr. Li described the Plaintiff as displaying an unkempt appearance, restless attitude and behavior, anxious mood and affect, slow speech and thought content, and poor insight and judgment. (R. 92). Dr. Li further noted that the Plaintiff was "court ordered to be admitted for rehabilitation" and that her "drug of choice [was] alcohol." (R. 91). Dr. Li diagnosed the Plaintiff with alcohol dependence and mental disorder, not otherwise specified, and prescribed her Vistaril for anxiety, Lexapro for depression, Remeron for insomnia, and Seroquel for mood stabilization. (R. 91–92).

The Centerstone records additionally demonstrate that, in early May 2020, the Plaintiff was recommended for a twenty-eight-day inpatient drug treatment program by one of Centerstone's counselors. (R. 102–03). The Plaintiff was characterized at the time as cooperative, anxious, and restless, and as exhibiting appropriate thought content, tangential speech, poor decision-making skills, poor judgment, an anxious mood, and congruent affect. (R. 101–02). While it seems from the records that the Plaintiff was not taking her medications at that juncture (R. 102), she later reported in mid-May 2020 that her antidepressant was not working and requested a modification of her prescription (R. 122).

18

The Centerstone records show as well that the Plaintiff continued treatment at the facility into August 2020. (R. 94). In the middle of that month, Dr. Taylor again noted that the Plaintiff suffered from PTSD, unspecified, along with major depressive disorder, single episode, unspecified. (R. 94–95). Dr. Taylor described the Plaintiff's mental status as reflecting an anxious and depressed mood, as well as a depressed affect, normal speech and appropriate content, and fair insight and judgment. (R. 95).

Upon being presented with this evidence from Centerstone, the Appeals Council concluded it did "not show a reasonable probability that it would change the outcome" of the ALJ's disability determination and the Council therefore did not exhibit that evidence. (R. 2). This conclusion by the Appeals Council was erroneous.

To begin, the information contained in the Centerstone materials indicates that the Plaintiff received treatment at the facility for her mental health problems, at least in part. As such, the Centerstone records arguably conflict with the ALJ's finding that the Plaintiff's disability allegations lacked support because she had "not sought regular outpatient mental health counseling," nor had she "required hospitalization due to psychiatric-based symptoms." (R. 34). This apparent inconsistency provides a sufficient basis for remand. *See, e.g., Pupo v. Comm'r of Soc. Sec. Admin.*, 17 F.4th 1054, 1063–64 (11th Cir. 2021) (explaining that the newly submitted medical records had a reasonable probability of altering the outcome of a decision in part because they contradicted the ALJ's findings that the claimant had never been hospitalized for any of her physical impairments); *Donna H. v. Comm'r of Soc. Sec.*, 2020 WL 13576778, at *23 (N.D. Ga. Aug. 18, 2020) ("Given that the ALJ relied on the lack of any previous,

19

recent psychiatric hospitalizations in affording [a medical] opinion 'significant weight' over the conflicting treating source opinions, and in turn, finding that [the] claimant did not suffer from any severe impairments, evidence refuting this could certainly have a 'reasonable probability' of changing the outcome of the case.").

The Centerstone documentation similarly demonstrates, *inter alia*, that the Plaintiff was diagnosed with PTSD, anxiety, and depressive disorder; was Baker-acted in April 2020; displayed signs of depression, anxiety, and poor insight and judgment; and was prescribed medications for her mental health problems.  (R. 91–129).  This information likewise calls into question the ALJ's conclusion that there was no evidence the Plaintiff had "any significant mood or formal thought or psychotic disorder" or "significantly abnormal mental status examination findings."  (R. 34–36).  This is especially true since the latter finding served as the basis for the ALJ's acceptance of the opinions of Dr. Dedricks and the state agency medical consultants.  *Id.*  And, in light of the ALJ's apparent reliance on the lack of such records, there is a reasonable probability that the Centerstone records could alter the outcome.  *See Pupo*, 17 F.4th at 1063–64; *Donna H.*, 2020 WL 13576778, at *23.

In response, the Commissioner relies heavily on the fact that the abnormal findings reflected in the Centerstone materials were connected to the Plaintiff's substance abuse issues, and that she primarily sought treatment for those problems as opposed to her psychiatric complaints.  (Doc. 23 at 8).  The Court is not persuaded.  It can be fairly argued from the Centerstone documentation that the Plaintiff obtained treatment for depression and PTSD during her stay there and that she showed

improvement after taking medication prescribed for those conditions.  (R. 91, 125). And contrary to the Commissioner's suggestion, it is not the mere reference to the Plaintiff's diagnoses and prescriptions in the Centerstone records that renders those materials important (Doc. 23 at 9), but the fact that the evidence from Centerstone concerning the Plaintiff's conditions creates a reasonable probability of a different outcome.

Lastly, it bears emphasizing that in remanding this case for further proceedings, the Court does not make any findings as to whether the Plaintiff is, in fact, disabled. Rather, on remand, the ALJ is directed to engage in a thorough evaluation of all the medical evidence and to secure testimony from a VE, if necessary.

## IV.

For the foregoing reasons, it is hereby ORDERED:

1.      The Commissioner's decision is reversed, and the case is remanded for further proceedings before the Commissioner consistent with this Order.

2.      The Clerk of Court is directed to enter Judgment in the Plaintiff's favor and to close the case.

SO ORDERED in Tampa, Florida, this 30th day of March 2023.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record

21